IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANN BARTON, individually, and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>SWAN SURFACES, LLC.,<br><br>Defendant. | Case No. 20-cv-499-SPM |

**MEMORANDUM AND ORDER**

**McGLYNN, District Judge:**

  Plaintiff Ann Barton, former employee of Swan Surfaces, LLC., brings a proposed class action against Swan Surfaces, Inc. for alleged violations of the Illinois Biometric Privacy Act ("BIPA"), codified at 740 ILCS §14/1, *et seq*. Swan moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the claims are preempted and that Barton failed to exhaust her remedies. For the reasons set forth below, the Court grants the Motion to Dismiss.

  **The Illinois Biometric Information Privacy Act**

  The Illinois General Assembly enacted the Illinois Biometric Information Privacy Act ("BIPA"), in 2008 to protect a person's privacy interests in his "biometric identifiers", which includes fingerprints, retina and iris scans, hand scans and facial geometry. 740 ILCS 14/1, *et seq*. (2008); *Fox v. Dakkota Intefrated Systems, LLC.,* 980 F.3d 1146 (2020). BIPA was created in response to the growing use of biometrics "in the business and security screening sectors". 740 ILCS 14/5. In fact, the legislative

findings refer to the immutability of biometric identifiers and the risk of identify theft, and state the following, "Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c). Because "the full ramifications of biometric technology are not fully known", the General Assembly found that "the public welfare, security, and safety will be served by regulating the collection, use, safeguarding handling, storage, retention, and destruction of biometric identifiers and information." *Id.* §§14/5 (f)-(g).

Section 15 of the Act comprehensively regulates the collection, use, retention, disclosure and dissemination of biometric identifiers. 740 ILCS 14/15. Specifically, § 15(a) of BIPA states:

> "A private entity in possession of biometric identifiers or information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever comes first." 740 ILCS 15/15(a).

Section 15(b) of the Act deals with informed consent and prohibits private entities from collecting, capturing, or otherwise obtaining a person's biometric identifiers or information without the person's informed written consent. *Id.* § 15(b). In other words, the collection of biometric identifiers or information is barred unless

the collector first informs the person "in writing of the specific purpose and length of term for which the data is being collected, stored, and used" and " receives a written release" from the person or his legally authorized representative. *Id.*

## PROCEDURAL BACKGROUND

On May 29, 2000, plaintiff, Ann Barton ("Barton"), individually and on behalf of all other similarly situated, filed a two-count Class Action Complaint against defendant, Swan Services, LLC. ("Swan") (Doc. 1). Barton seeks to represent a class of "[a]ll individuals who, while residing in the State of Illinois, had their fingerprints collected, captured, received, otherwise obtained and/or stored by Swan" (the "Class") (*Id.,* p. 8). Specifically, Barton alleges that Swan violated BIPA for: (1) failing to institute, maintain, and adhere to publicly available retention schedule in violation of 740 ILCS 14/15(a); and (2) failing to obtain informed written consent and release before obtaining biometric identifiers of information (*Id.,* pp. 11-14).

On July 31, 2020, Swan filed its motion to dismiss along with supporting memorandum of law (Docs. 15, 16). Swan attached as exhibits to its memorandum of law the following three documents: (1) the declaration of Sandy L. Moore, vice president of human resources for Swan; (2) a copy of the collective bargaining agreement ("CBA") between Laborers' International Union of North America, Local 1197 ("the Union") and The Swan Corporation, effective August 1, 2019 through July 31, 2024[1]; and, (3) Appendix "A", which is a copy of the dues check-off authorization

---

[1] The CBA is 25 pages, plus cover sheet and table of contents, and was executed by Flint Taylor, Business Manager for Local 1197 on July 31, 2019, by Sandy Moore, Director of Human Resources for Swan Corporation on August 1, 2019 and by Clint Taylor, Business Manager for Southern & Central Illinois Laborers' District Council on August 1, 2019.

form executed by Barton on December 4, 2019 (Docs. 16, 16-1). Swan asserts two major arguments for dismissal (Doc. 16). First, that Barton's claims are preempted by Section 301 of the LMRA, and second, that Barton's claims must be dismissed because she failed to exhaust her remedies under the collective bargaining agreement (*Id.*). Swan also contends that the Union was Barton's "legally authorized representative" with respect to claims involving biometric timekeeping (*Id.*).

On September 17, 2020, Barton filed her memorandum of law in opposition to motion to dismiss (Doc. 23). Plaintiff raises several arguments as to why her complaint should not be dismissed, including: exceptions to preemption; rights not preempted; violation of § 15(a)'s destruction duty; futility of invoking grievance procedure and silence in CBA on use of biometric timekeeping systems (*Id.*).

On September 30, 2020, Swan filed its reply in support of its motion to dismiss (Doc. 25). Swan attempts to counter Barton's arguments and again argues that the BIPA claims are preempted, that the CBA is applicable and that there is binding authority in the Seventh Circuit on this issue (*Id*).

## FACTUAL BACKGROUND

Barton was employed by Swan from December 9, 2019 until January 8, 2020 (Doc. 16). She was an hourly employee in the company's molding department at the Centralia manufacturing facility (*Id.*). On December 4, 2019, prior to her first day of work, Barton executed the document entitled "Appendix "A" – Dues Check-Off Authorization Form[2] (Doc. 16-1). Barton clocked in and out of work using her

---

[2] Appendix "A" authorized the withdrawal of union fees from Barton's wages at Swan to go towards

fingerprints (Doc. 1).

During the period that Swan collected and used Barton's fingerprints, she was a member of the Union (Doc. 16-1). The CBA was in effect during the entirety of Barton's employment with Swan *(Id.)*. The collective bargaining agreement contained a management rights clause[3] *(Id.)*. The CBA also included a grievance procedure [4]*(Id)*.

## LEGAL STANDARD

The motion to dismiss and supporting memorandum of law filed by Swan were brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Docs. 15, 16). A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever

---

her dues for the Union

[3] The management rights clause stated in pertinent part, "the Employer has the sole and exclusive right to manage and direct any and all of its operations."

[4] See "Art. 8 – Grievance and Arbitration Procedure" of CBA for resolution of disputes as to the interpretation and application of the CBA, with the dispute culminating in arbitration.

evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor*, 875 F.3d at 853 (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3 at 444 (internal citations omitted).

## ANALYSIS

Swan argues that Barton's claims are preempted by Section 301 and moves this Court to dismiss her claims based on this rationale (Docs. 15, 16). In response, Barton counters that the legislature enacted BIPA to address security concerns and intended for it to have substantial force (Doc. 23). Barton attempts to rely upon *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), and should that fail, attempts to distinguish *Miller v. Southwest Airlines, Co.,* 926 F.3d 898 (7th Cir. 2019); however, both arguments fall short.  Because Swan attached the CBA and the declaration of Sandy Moore, this court can look beyond the complaint can view any competent proof submitted by the parties to determine if plaintiff has established jurisdiction by a preponderance of the evidence. *Meridian Sec. Inc. Co. v. Sadowski,* 441 F3d. 536 (7th Cir. 2006).

**I.      The LMRA Preempts Plaintiffs' BIPA Claims**

Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 (a) provides:

"Suits for violation of contracts between an employer and a labor

organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Beginning with *Teamsters v. Lucas Flour Co.*, the Supreme Court developed the principle of § 301 preemption which holds, "if the resolution of a state law claim depends upon the meaning of a collective-bargaining agreement, the application of state law, which might lead to inconsistent results since there could be as many state law principles as there are States, is pre-empted and federal labor law principles that are necessarily uniform throughout the Nation must be employed to resolve the dispute. 369 U.S. 95 (1962). In other words, section 301 preempts a state law claim if resolution of the claim "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988). This preemption encompasses "claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *see Miller*, 926 F.3d at 904); *see also Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013) (Section 301 preemption "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract").

### A. *Miller v. Southwest Airlines, Inc.*, 926 F.3d 898 (7th Cir. 2019)

Miller, in which the Seventh Circuit found that BIPA claims are preempted when they require interpretation of a CBA, controls the Court's decision in this case.

The facts in *Miller* parallel those before us. 926 F.3d 898. In *Miller,* plaintiff raised BIPA claims against his employer, Southwest Airlines, which required employees to use their fingerprints to clock in and out of work. *Id.* at 901. Specifically, plaintiff claimed Southwest violated BIPA by implementing the timekeeping "systems without their consent, by fail[ing] to publish protocols, and by us[ing] third-party vendors to implement the system." *Id.* At all relevant times, Southwest had a CBA with plaintiff's union. *Id* Southwest moved to dismiss, arguing that it had provided the plaintiff's union with the required notice and that the union consented to the use of the fingerprint system, either expressly or through the CBA's management rights clauses. *Id.* Furthermore, Southwest asserted that the timekeeping system was a proper subject of negotiation between a union and employer. *Id.*

The Seventh Circuit began its analysis in *Miller* with the premise that disputes over the interpretation or administration of a collective bargaining agreement with an airline must be resolved by an adjustment board under the Railway Labor Act (RLA). *Id.* at 903. In its analysis, the Court noted that there was a CBA in place, and that the union was the exclusive bargaining agent for the workers. *Id.* In so holding, the court affirmed the dismissal by the district court on preemption grounds because plaintiff's claims "necessarily entailed the interpretation or administration of the CBA", and rejected plaintiff's arguments that the union was not his "legally authorized representative" for BIPA purposes. *Id.* at 904.

Although *Miller* involved the RLA, not the LMRA, the Supreme Court has held that the RLA preemption standard is "virtually identical to the pre-emption

standard the Court employs in cases involving § 301 of the LMRA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). Furthermore, the Seventh Circuit recently suggested that its holding in *Miller* applied to an analogous fact pattern under the LMRA. *Fox,* 980 F.3d 1146 (declining to hold that union member plaintiff's BIPA claim was preempted by the LMRA because the district judge did not address the issue and the parties did not brief it, but stating that "the answer appears to flow directly from *Miller*").

Although not binding on this Court, our sister district to the north has had several occasions to review BIPA claims, and in each has determined that they are preempted by §301 of the LMRA. *See Fernandez v. Kerry, Inc.*, 2020 WL 7027587 (N.D. Ill. November 30, 2020); *Williams v. Jackson Park SLF, LLC,* 2020 WL 5702294 (N.D. Ill. Sept. 24, 2020); *Gray v. Univ. of Chicago Med. Ctr., Inc.*, 2020 WL 1445608 (N.D. Ill. Mar. 25, 2020); *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202 (N.D. Ill. Feb. 26, 2020). In all four cases, the unionized employee/plaintiff alleged, on behalf of themselves and classes of similarly situated individuals, that the employer/defendants violated BIPA through collection, storage and use of biometric information, and in all four cases the Northern District has aligned with Miller.

### i. *Fernandez v. Kerry, Inc.*, 2020 WL 7027587

In *Fernandez,* five former employees of Kerry, Inc., brought a proposed class action for alleged violations of BIPA. 2020 WL 7027587 (N.D. Ill. Nov, 30, 2020). The employees worked in production in the Melrose Park plant where they were required to scan their fingerprints to clock in and out of work. *Id.* The employees were all

members of the Miscellaneous Warehousemen, Airline, Automotive Parts, Service, Tire and Rental, Chemical and Petroleum, Ice Paper and Related Clerical and Production Employees Union, Local No. 781. *Id.* Defendant moved to dismiss on preemption grounds, arguing that the CBA between Kerry and Local 781 contained a management rights clause, along with a grievance procedure for resolution of disputes as to the interpretation and application of the CBA that culminated in arbitration. *Id.*

The *Fernandez* court conducted an in depth analysis, but ultimately relied upon the Seventh Circuit holding in *Miller v. Southwest Airlines Co.*, 926 F.3d 898, and granted the motion to dismiss on preemption grounds. *Id.* The district court emphasized that it was bound to follow Miller, but went on to find that its conclusion that plaintiffs' BIPA claims were preempted was bolstered by the Northern District Court decisions in *Williams*, 2020 WL 5702294, *Gray,* 2020 WL 1445608*,* and *Peatry,* 2020 WL 919202.

### ii. *Williams v. Jackson Park SLF, LLC,* **2020 WL 5702294**

In *Williams*, the plaintiff worked as a nurse technician for defendant, Jackson Park SLF, LLC., and was required to scan his handprints to clock in and out of work. 2020 WL 5702294 (N.D. Ill. Sept. 24, 2020). Plaintiff alleged that Jackson Park violated BIPA for not having a retention schedule and for not obtaining informed written before obtaining and disclosing biometric identifiers. *Id.* Plaintiff was a member of United Food & Commercial Workers International Union, Local 1546, which had a collective bargaining agreement with Jackson Park. *Id.* The CBA

contained a management rights clause and also included a grievance procedure for disputes about the application or interpretation of the CBA. *Id.* Defendant moved to dismiss the complaint arguing that because plaintiff was a union member, the issue in dispute was preempted under Section 301 of the LMRA. *Id.*

The district court relied upon *Miller v. Southwest Airlines,* and agreed with defendant's position. *Id.* Plaintiff raised arguments that the CBA did not mention biometric information and that the union could not waive his statutory consent or privacy rights, but the court noted that the same could be said about the CBA in *Miller*. *Id.* The court also reiterated that it could not ignore Seventh Circuit precedent and admonished that plaintiff's reliance on Illinois trial court opinions was not binding. *Id.*

### iii. *Gray v. Univ. of Chicago Med. Ctr., Inc.*, 2020 WL 1445608

The plaintiff in *Gray* was a nurse who worked for the University of Chicago Medical Center. 2020 WL 1445608 (N.D. Ill. Mar. 25, 2020). She was represented by a nurses' union, which was the exclusive bargaining agent for plaintiff and other nurses. *Id.* Her duties included using a machine to dispense medication, which required employees to use their handprint as a means of authentication to access the medication. *Id.* She filed claims under BIPA, but the court dismissed her complaint finding her claims were all preempted by Section 301 of the LMRA. *Id.* In so holding, the court found that Miller, where the Seventh Circuit found that BIPA claims are preempted when they require interpretation of a CBA, controlled its decision. *Id.*

### *iv.     Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202

In *Peatry*, plaintiff was a machine operator at defendant's bakery product manufacturing company in Cicero, Illinois where she was required to clock in and out with her fingerprints. 2020 WL 919202 (N.D. Ill. Feb. 26, 2020). Plaintiff was a member of the Chemical and Productions Workers Union, Local 30, AFL-CIO, that had a CBA with defendant. *Id.* Plaintiff attempted to ignore and distinguish *Miller* after a motion to dismiss was filed; however, the court determined the facts were almost identical and found that *Miller* governed. *Id.* at *3. As such, the court held that plaintiff's claims were preempted under § 301, citing that the "state law is preempted to the extent that a state has tried to overrule the union's choices on behalf of the workers". *Id.* at *4.

It is important to note that in all four cases *infra*, the district judges emphasized that he/she must follow the decisions of this court (Seventh Circuit) *whether or not* they agree. *Reiser v. Residential Funding Corp.,* 380 F.3d 1027 (7th Cir. 2004)(emphasis added). Similarly, this Court is bound to follow Seventh Circuit precedent; therefore, Barton's claims are preempted by Section 301 of the LMRA and must be dismissed.

### B. Management Rights Clause

In further support of finding that BIPA is preempted by § 301, the courts also looked at the language contained in the management rights clauses in the respective CBAs and found them to be very similar. *See Fernandez,* 2020 WL 7027587; *Williams,* 2020 WL 5702294; *Gray,* 2020 WL 1445608; and *Peatry,* 2020 WL 919202. As such,

it is necessary to interpret the management-rights clause at issue to determine whether the union consented to the use of the time clocks on behalf its' collective members.

In *Miller,* the management rights clause stated, "The right to manage and direct the work force, subject to the provisions of the Agreement, is vested in and retained by the company." Similarly, the management rights clause between the union and Swan states, "[the] Employer has the sole and exclusive right to manage and direct any and all of its operations" (Doc. 16-1, p. 1). In this case, the clause contains twenty-six (26) additional rights and "it is specifically recognized and agreed that the Employer reserves and has the sole and exclusive right to: (u) Control the use of equipment, property and technology of the Employer, including current and/or future surveillance equipment such as but not limited to GPS, biometrics and surveillance cameras" (Doc. 16-1, pp. 1-3).

Although the *Miller* CBA did not expressly mention biometric data nor did it anticipate the use of biometric data, the Seventh Circuit found that whether its management right clause gave rise to consent regarding biometric data was for an adjustment board, not for a court to determine. *Miller,* 926 F.3d at 903. In this case, biometric data may have been anticipated in that it was specifically mentioned in the CBA management rights clause, and consequently, like *Miller,* it is an issue for review and interpretation, but by an arbitral board and not the court system.

### C. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988)

Barton contends that *Lingle*, not *Miller,* controls in this case; however, her

argument is not persuasive (Doc. 23). In *Lingle*, plaintiff brought an action in the Circuit Court for Williamson County, alleging that she had been discharged for exercising her rights under the Illinois Workers' Compensation Act. 486 U.S. 399. The case was removed to this court, which held that Lingle's claim for retaliatory discharge was preempted by § 301 of the LMRA. *Id.* Although the Seventh Circuit affirmed, the Supreme Court overruled, holding that the application of employee's state tort remedy was NOT preempted by § 301 because it did not require interpretation of a CBA. *Id. (emphasis added).* In other words, so long as the state law claim could be resolved without interpreting the CBA, the claim was independent for preemption purposes. *Id.* Such is not the case at hand.

In reaching its decision, the *Lingle* court examined the elements of the offense of retaliatory discharge: (1) that the employee was discharged or threatened with discharge; and (2) that the employer's motive was to deter the employee from exercising his rights under the Workers' Compensation Act. *Id.* at 399, 400. The Court determined that neither of those elements required the court to interpret any term of a CBA. *Id.* at 400. Specifically, the Court held that a retaliatory discharge claim may be pursued under state law because such a claim can be resolved without interpreting a collective bargaining agreement; it is person-specific and does not concern the terms and conditions of employment. *Id.* Furthermore, the Court reiterated that interpretation of collective-bargaining agreements remained firmly in the arbitral realm; judges can determine questions of state law involving labor-management relations only if such questions do not require interpreting the collective bargaining

agreement itself. *Id.*

This court cannot separate the BIPA claims without looking at the CBA. Because interpretation of the CBA is essential to this case and because they are so intertwined, Barton's claims are preempted.

## II. Plaintiff Did Not Exhaust Her Remedies

Swan's second argument is that Barton did not exhaust her remedies under the CBA prior to filing her complaint (Docs. 15, 16). In response, Barton counters that her failure to invoke the CBA's grievance procedure is not enough for dismissal (Doc. 23). Barton further clams that any failure to invoke the grievance procedure should be excused because any attempt would have been futile (*Id.*).

Article 8 of the CBA is entitled, "Grievance and Arbitration Procedures", and it is broken into five (5) Sections that culminates in arbitration (Doc. 16-1, p. 9). Where the CBA establishes a grievance and arbitration remedy, that remedy becomes exclusive by force of Section 301. *Lancaster v. Norfolk and W.Ry.Co.*, 773 F.2d 807 (7th Cir. 1985).

Swan is correct that, as a general matter, exhaustion of remedies is required; however, there are exceptions. *Hammer v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers or Am.*, 178 F.3d 856 (7th Cir. 1999). An employee can be excused from a CBA's exhaustion requirement if: (1) resorting to the grievance procedure would be futile; (2) the employer, through its conduct repudiated the grievance procedure itself; or (3) the union breached its duty of fair representation. *Id.*

Futility is a recognized exception to the exhaustion requirement. *Glover v. St. Louis – San Francisco Ry. Co.,* 393 U.S. 324 (1969). But, an employee's speculation that it would be futile to file a grievance is insufficient to excuse the employee's failure to exhaust. *Douglas v. American Info. Technologies, Corp.,* 877 F.2d 565 (7th Cir. 1989). Instead, the employee must put the grievance procedure to the test and show that he/she tried to exhaust the contractual remedies and that further attempts to pursue a grievance would have been futile. *Id.* at 574*; Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173 (7th Cir. 1987). Because Barton's claim of futility is nothing more than a mere, unsubstantiated assertion, failure to exhaust the grievance procedure is not excused.

## CONCLUSION

For the reasons set forth above, and in reliance on the binding precedent in *Miller v. Southwest Airlines, Co.,* 926 F.3d 898 (7th Cir. 2019), defendant Swan Surfaces, LLC's motion to dismiss for lack of subject matter jurisdiction is GRANTED. Barton's class action complaint is dismissed without prejudice and any potential motion for class certification is moot at this time. Although this Court is reticent to do so, Barton is granted until March 5, 2021 to file an amended complaint correcting the jurisdictional deficiencies identified here, if she can do so consistent with Rule 11 of the Federal Rules of Civil Procedure. If no amended complaint is filed on or before March 5, 2021, the Court will enter final judgment and close the case. If Barton files an amended complaint, Swan will have 30 days from that date to file a responsive pleading.

**IT IS SO ORDERED.**

**DATED: February 4, 2021**

>**/s/ Stephen P. McGlynn**
>**STEPHEN P. McGLYNN**
>**U.S. District Judge**